9, A-L-U-S Networks v. Apple. There's some more seats in the back. Marshall, if you want to tell people they can file in, there's more seats back there. Now that people have left. We're here on behalf of A-L-U-S for appealing for the motion of summary judgment of no infringement. The motion of summary judgment of no infringement was ran on three basic grounds. The primary ground was claim differentiation. Second, the district court looked at the specification to find support for its conclusion of claim differentiation. Isn't it just claim construction? So you've got claim construction and those are the different sources of claim construction, right? Correct. The court attended to claim construction, but in this claim construction it did so primarily based on the principle of claim differentiation. It looked to support that claim differentiation and then said it was confirmed by a couple of statements that we had made in IPR. So I want to address each one in turn because the single primary basis for the court's plan was based on the claim differentiation. And we believe the claim differentiation, the court misunderstood the difference between claim and claim differentiation. So let me start with what the fundamental invention is. The fundamental invention is an iPhone that controls a control point proxy, an iTunes server that controls the control point, the media server with the content and the media server with the television. Those are the four components of the invention. What the court said, what claim one says is if one is in communication with one, the other one is in communication with the other, the only way the data, the media can get from the media server to the media vendor is if the control point proxy and the control point work together. Because that's the only way that could happen because the two are one. Okay. How about this? How about, if you don't mind, I'm going to fast forward you. Suppose I agree with you that the plain meaning of the claims written in the context of the spec does not prohibit CP from being invoked in claims 2 and 21. So let's just jump forward and say that I agree with you until that point. But your hurdle to overcome, it seems to me, is disclaimer. Now, we can give it a lot of different names. We can call it prosecution history disclaimer. We can call it judicial estoppel. And I'm not sure what the right name would be if it applies here. But that, to me, is it seems like the heart of what you need to convince us of. And if I was really preparing for this, that was my conclusion as well. The issue is really not one of what the claim differentiation is. It's whether there's a prosecution history disclaimer or not. And so there's really two arguments. First is a pre-IPR statement is itself not a disclaimer. This court hasn't provided guidance on that. And I think the IPR practitioners would appreciate that. But I actually want to focus on the second argument, which is, was there a disclaimer in the statement? And there are two statements made in the appendix. So I turn to both of those statements. The first statement is on Appendix 973. And then the second statement is on Appendix 1003. What is our standard for review when someone else finds there's a disclaimer? Under what standard of review do we review the lower court decision of a disclaimer? Your Honor, this is a claim for prosecution. So at the end of the day, we believe it's still a disclaimer. And I would actually present it to the court. The district court actually didn't find a disclaimer. They said it was akin to a disclaimer. It really focused on the claim differentiation argument and really looked at the disclaimer as what the court specifically said, a confirmation. But let me turn specifically to the disclaimer issue. The disclaimer was the first sentence. Similarly, certain other challenge-dependent claims require only that the control point or the control point logic be invoked if it's determined that neither the medias or the immediate threat or any communication with the local lawyer is valid. So let's start with the word similarly. You're at JA1039? No, I'm sorry, I'm at 973. Middle of the page. Middle of the page. I'm going to start with the word similarly. So there's the first sentence where the court reset that the challenge-dependent claim required only that the control point logic be used. It would suggest to the ordinary reader from the English language that would exclude the involvement of the control point. So it would suggest to the user that the only thing that could be used is the CPD. And what I would say is it takes almost exactly what the Sandesh situation was, which is you have a sentence that would appear to go against us. If this was the entirety of the record, I would read that to say that sentence seems to imply that the control point can't be used. But it's not the entirety of the record. The entirety of the record are actually a combination of three sentences, so you should read the next two sentences that follow. So let me read those two next sentences. It says, remember, the question going in is, is only the CPD allowed or is only the CPD required? And the very next sentence says, In other words, the challenge claims require selectively invoking CP logic and CPP logic. And in the very next sentence, it says, as discussed above, this is a key aspect of the claim invention, which addresses an important objective, namely the reducing of expensive bandwidth. So in 1994, cellular bandwidth cost about 25 cents a minute, whatever. So your goal when he was planning it was to go to the server remotely through the phone, but minimize that usage of the cellular communication as much as possible so that the free Wi-Fi would do as much. But again, reducing does not equal eliminating. What they are saying, what the court concluded based on this statement was twofold. Only the CPD is allowed. It did not say our interpretation, which is only the CPD is required. And two, it said the CPD eliminates the use of the CPU. Excuse me, the CPD uses eliminate. And I'm saying the very next sentence says, don't eliminate, reduce the use. So I believe this is identical to the Sandisk scenario, where one statement, standing alone, one sentence standing alone, I'll concede probably favors that beside the other one. If you took that first sentence and there was nothing else in the record, yes, that would seem to imply that the CP can't be used. But if you read the next two statements, it doesn't say only the CPD is allowed. It just basically says the CPD is required. It certainly doesn't say the CPD can have no involvement, because it says you're reducing wireless bandwidth. Reducing would not imply elimination. So if you take three sentences together, the entirety of the prosecution statement, we allege this quote that that's not satisfying. What about the language at JA 1004, which talks about, again, it has the language only the CPP is invoked, and refers to that as being in claims two and 21? So it's that. Yes. Those are two basically sort of mirror statements. But I would again argue, if you look at the statement, look at the very next statement that follows. Importantly, these three steps serve a key purpose of enabling the Cain's invention to use in a local wireless network, wherever such network is available, in order to reduce the wireless spectrum consuming communication. So again, what we're trying to do is, in this scenario, reduce the amount of work that the server on the Internet needs to do, because you're using wireless communications there. But the idea that a scorefront would not be involved in paid content would sort of be illogical. I mean, let's just step back from the claims and understand what the patent is about. The patent is about Internet delivery of media content. The first scenario is that one is in connection with the server, the other one is in connection with the media renderer. Logic would require the two to communicate. But even if claim two structure was possible, where the CP, the phone, the wireless communication, the media server, and the media renderer, the idea that you wouldn't go to a storefront to pay for something before you actually got the content would sort of seem illogical. What about the PTO's response itself to those statements? So, you know, we're looking at either judicial estoppel or prosecution history estoppel. And in this case, at page JA842, you've got the PTAB saying specifically that talks about the CP logic or the CPP logic exclusively handling the negotiation of the media content delivery, suggesting that they were looking at this only language and interpreting it in a way that's the way Apple is now interpreting it, and therefore making a decision about IPR institution based on that understanding of the language that A-List used. So I have two responses to that. You know, the first response is both Apple actually at the district court level argued that what matters is what we said, and this court should not take into account what the PTAB said or did. Well, it's a legal issue, so... Okay, so it's in APPX 1166. Okay. I'm just giving you what Apple said. Sure. It should not be considered, and I don't necessarily disagree with that. But let's take a look at what Apple's, what the PTAB said. The PTAB said that identical evidence is being used for claim one and claim two. It didn't go into detail as to explain why, what it found as a distinguishing feature between the two as to what evidence was missing. What it did say was it appears that the CP is exclusively handling, and that was actually a core part of the argument at the district court level. What does the word handling mean? In handling, one of the things that we argued at the district court level was handling doesn't mean an exclusion of involvement, right? Handling can mean, which is what we were saying at the district court level, potentially was the CP can say, I bought this movie. I'm going to pay for the movie. Get it to me. And then you just go to the CP, and all you get is a specific encryption key, the term lease bag, and you get that information, and then you go get the content. Handling could easily be understood to mean what we presented at the district court, which is, look, you can get the content, you can do it, select it, get your content, but you can be the active agent. Handling could easily have meant that, and so what I would say is but in the prior art that was asserted against these claims, both CPP and CP logic were invoked, correct? Correct. They were capably invoked. Both of them were capably invoked. You got around that prior art, arguably, with regard to Claim 2 and by 21, by a sentence that says only CPP is invoked to negotiate media content between the MS and MR. I guess I don't understand. The prior art had both. You say the way you get around the prior art is you only use one, so I don't understand how to reconcile that. You want me to look at the context of everything. Well, the context of everything includes what were you trying to overcome, and the thing you were trying to overcome used both. How do you overcome that thing if I don't give the same reading to this language the district court did? No. Without further detail on the explanation of the prior art, the difference between Claim 1 and Claim 2 is Claim 1 says both of these must be present and both of these must negotiate to deliver the content. Claim 2 is one step beyond. Well, Claim 2 says not only must you have the option of having the two of them work, you must also have the option of having pure delivery. So the concept of Claim 2 was delivering was I'm going to give you iTunes paid content. I can give you in Claim 2 the structure of having a YouTube content where I don't want to be involved or a website delivery. So you could have the point of Claim 2 is it provides an additional limitation in terms of optionality. So what is the additional limitation? The additional limitation is that the CP can be eliminated. It doesn't mean it's required to be eliminated. The additional limitation of Claim 2 is you can have a structure where only the CPP does all the content. But that was the argument you made to overcome the prior art references. Right. But the difference to overcome the prior art reference was that's a possibility, not the question that's required. So I feel like what we're doing is we're getting confused between validity issues with respect to what's allowed and with respect to infringement, what's required. What is allowed to overcome a prior art reference is if there is a structure, one possibility within the different possibilities that allows us to say this is not what the prior art allows. Now you agree, of course, just as a basic teaching point, that something that anticipates a claim, if earlier, would later infringe the claim, right? Something that anticipates would later infringe the claim, correct? Right. So the analysis, somebody shouldn't be able to say one thing to the patent office in order to avoid a prior art rejection and then later take a different approach when asserting infringement, right? Correct. And I'm not saying that's what we did. What I'm trying to explain is that what we said to the patent office is that Claim 2 requires two functionalities. One is both work. One is one works. And that is two different functionalities. Where do you get the idea that it says both work? Well, Claim 2 would require that, right? Because Claim 2 is dependent on Claim 1. So the logic of Claim 2 would be that you have two separate functionalities. No. Claim 2 is dependent on Claim 1, which means it therefore must be narrower than Claim 1. Right. Claim 1 required two. Claim 2 came along and required only one. No, but narrower doesn't mean an additional functionality, limitations. You have to have two functionalities in Claim 2. So your specification also talks about the advantages of in some circumstances having the CCP logic work and sometimes having the CCP logic and the CP logic. But it provides a very specific reason why in the scenario of Claim 2 you'd want to only have the CP logic work. Isn't that right? Correct. We're trying to eliminate or reduce the bandwidth that's used from the wireless spectrum. So the consequence is that you want the CPP to do as much as possible. Right? You want to have the CP do as little as possible. Because the CP communication is going across the wireless spectrum. And that consumes money. And what we're trying to do is reduce that consumption of money. And that's exactly what we said to the PTA. We're attempting to reduce that cost. And you do successfully reduce it if you use only one, right? Absolutely. When you have a reduction, one theoretical possibility of reduction is elimination. We don't disagree with that. So then how does what you agreed to in the beginning was that one sentence read out of context you said would look really bad for you. And you started on page 9 something, I'm on page 104. That one sentence appears in multiple places in this record. Correct. So this one sentence you said looks bad for you. But you said the sentences that come after save us. But I could interpret the sentence that come after about reduction to you reduce the bandwidth if you use only one. I mean, and that is how you in fact do reduce the bandwidth. So why don't I read those two sentences as consistent with each other since reduction, if I read the first sentence and it says only this one, and I read the second sentence it says we'll reduce bandwidth, well, yes, if you use only this one it will reduce bandwidth. I don't understand how the reduction sentence saves you. Because reduction is not elimination. If we had meant to say no involvement, we would have said, in the very next sentence we would have said the use of the CP is eliminated, therefore there's benefit in the communication. The sentence actually in both 973 and in 104 is followed immediately by the issue of reduction. And I think an understanding of the technology makes it clear that you're never going to provide paid content without a reason. And so the idea that the CPP would eliminate the use of the CP entirely would sort of not fall into how entertaining content is delivered and would be delivered in a logical sense. Okay. I think we have your argument. You've used all your time and your rebuttal time. I'll restore some, but let's hear from the other side. I would encourage you to focus your argument on the same things that he did, if you don't mind. Absolutely, Your Honor. What I'd like to do is pick up exactly where we were on Appendix 973. I won't belabor the actual disclaiming sentence, because counsel seems to concede that that says what it says. But the law says you can't look at the context. But the context here are the following two sentences. And counsel glossed over the second sentence. The second sentence on 973 starts, in other words, so what we're going to be hearing is restating the same claim. In other words, the challenge claims, referring to the dependent claims, require selectively invoking the CP logic and or CP logic based on whether the MS and or MR can communicate with the UV through the local network. So it's saying that in the context of both being connected, which is the context of Claims 2 and 21, that it is the CP logic that is selectively invoked. That's just another way of saying only. So we've got two things saying the same thing right back to back. And even if you turn to the third sentence, which is what counsel... What about the and? I'm sorry? Selectively invoking CP logic and or CPP logic. Wait, wouldn't you normally say or if you meant them to be alternatives? Well, that's because this is covering all three scenarios. It's covering the independent claim scenario, which is both. Okay, I understand. And so it says, based on whether they can communicate. So it says, as discussed above, this is a key aspect of the claim dimension. So what do we know about that? That means that this was not a slip of the lip. This is something that they were focused on as being essential to their argument to the PTAB. And then we have the language that was just quoted, which addresses an important objective, namely reducing the use of expensive bandwidth. You know, counsel, both in their brief and today, stopped there. They stopped there. The sentence goes on. E.g., wide area cellular networks by implementing. So now we're going to tell you how this reduction occurs by implementing a least cost routing decision about how to negotiate media content delivery. Well, what's the how to negotiate media content delivery? Well, that's what we were just going over in the claims. It's choosing either the CP or the CPP or both, depending on the network context. So all three of these sentences are saying the same thing. The least cost routing decision is the how to negotiate. And in this case, when you pick the CPP, as the court has acknowledged, that reduction goes down to zero. So you can read all three of these things consistently. So can I ask you then, is it your view that the as discussed above key aspect, which includes the reducing language sentence, is a sentence that applies to pretty much all the challenge claims and the arguments made with regard to, say, claim 1 as well as claim 2? Or is that sentence really only applying to, what is it, 2 and 20 or 2 and 21? I can't remember what the numbers are precisely that are at issue. I apologize, Your Honor, but can you point me to which sentence you're referring to? The reducing sentence. The reducing sentence. Thank you, Your Honor. The one you just said, as discussed above, this is a key aspect of the invention, which addresses an important objective, namely reducing the use of expensive bandwidth. Yes. Now, if that sentence was tailored only to a claim 2 argument, and if you were right about claim 2 is one or the other, basically only one thing, then it would actually say eliminating. And instead it says reducing. So is your view that sentence is a broader sentence that applies to all the challenge claims? In some cases it reduces, in other cases it eliminates. Yes, exactly. It applies to all. If you go back up into the text, it's talking about the different variations. And so this is capturing all of them. What about how, going up further in the text, it actually starts with similarly certain of the challenge-dependent claims. So it's not talking about claims 1 and 20. It's talking about the dependent claims, right? Right. The sentence immediately precedes that is talking about the independent claims. It says based on the determination of the challenge-independent claims. So first the independent claims, then it turns to the dependent claims. So you're saying within one paragraph they're kind of hitting both, and then at the end when they summarize the advantages, those are the advantages of both or either one. It's not crystal clear which scenario. Sure, that's right. So the reduction language that's being pointed to is zero in the context of claims 2 and 21. In the situation of the independent claims, it would be reduction. But the point is all three of these sentences can be read together. The first sentence, the disclaiming sentence, means what it says. The counsel doesn't disagree with that. And if I could turn, Your Honors, to the other disclaimer, because this helps enlighten the situation as well. If we turn to 1.003 and 1.004, again, we have to look at the context. If we look at 1.003, at the very last paragraph at the bottom of that page, it starts claims 1, 2, and 4. It's claims 1, 2, and 4 as well as claims 20, 21, and 23 combined to claim three alternative steps. So here they're telling the Patent Office that these are different ways to accomplish something depending upon what the network environment is. Then we have the disclaimer itself, which is at the top of 1.004, which says if, however, the MS and MR are both in communication with UE via the local wireless network, then only the CPP is involved to negotiate meeting content delivery between the MS and the MR. It refers to claims 2 and 21. So there you have a very clear if-then situation, if A, then B. Council then pointed to the reduced language, but if you go down to the bottom of that page, 1.004, we have the same point made. It says the fact that the UPnP, this is the very end of the page, the fact that the UPnP does not care how the MS and MR communicate with UE confirms that the UPnP design cannot and does not teach or suggest this feature of the claims, this is the key part, which requires a least-cost routing decision based on the determination of available networks. And so as we learned from looking at page 973, the least-cost routing decision is the decision of which of a CP or the CPP logic is going to be invoked to do the media content delivery. So, again, the language of the disclaimer itself is clear, and the context surrounding it confirms that they meant exactly what they said. Even if we agree with you that this amounts to a disclaimer, this is part of the colloquy between the petitioner and the patent owner that occurred prior to the institution of the review. Why should we treat that as prosecution history? There's, I think, two parts of the answer to that. The first is the existing case law that the court can turn to seek guidance from. So, first we have the Supreme Court's Quozo decision. Quozo said, in part, that IPRs are re-examinational. I have the quotes here if you want, but they say it has a judicial aspect to it and has a re-examination aspect to it. But Quozo didn't draw a line between pre-institution, post-institution. Exactly. That was going to be my next point in making that determination or making those statements that it's partly judicial and partly examinational. They didn't draw a line saying that some of it's not and some of it is. The statements are broadly worded statements. And this court, in its prior pre-Quozo decisions, has held that comparable proceedings such as ex-party re-examination, inter-parties re-examination, and re-issue proceedings, that those kinds of statements, when the same kind of statements that are made here, when made there, constitute part of the prosecution history and can be disclaimers. And we have those cases in our brief, the Katz case, which had to do with re-examination. So you're addressing now the point about whether or not something that doesn't occur. I mean, prosecution we all typically think of as being that ex-party proceeding that results in the grant of a patent. Re-exam, inter-party re-exam, all this IPR stuff is sort of different. And what you seem to be addressing now is the idea that statements made in those contexts have nonetheless been held by our court to constitute prosecution history disclaimer. Don't fiddle with the words Judge Moore. We could have called it re-exam disclaimer. We could have called it IPR disclaimer. But why give it so many different names? But I guess the question I thought that Judge Lynn asked you, which I don't think any of those cases you point to address, and definitely correct me if I'm wrong, but this statement was made before the proceeding was even initiated. So to what extent is a statement made in advance of such a proceeding part of the history that ought to be folded in? Very good. So there are two parts to that as well. So the cases that address this issue of when the proceeding starts have had to do with, for example, whether you can appeal a denial of a motion to stay in a CBM. That's an intellectual properties case. Or whether estoppel, IPR estoppel applies. That's the Shaw case. And in those cases, both cases, the court had to grapple with the issue of when does a proceeding start? Because the right to do those two things, or the inclusion for estoppel, turned on when a proceeding began. So the court did a statutory analysis, as it should, and determined that because those two things are based on the proceeding, the proceeding will start upon institution. But that doesn't answer the different question of whether what happened before that is part of the prosecution history. None of the cases that this court has addressed, including the HP case, so those are really the three cases in addition to Cuozo that have addressed this issue, have said that what happens before is not part of the prosecution history. It doesn't compel that result either. Well, let me ask you a question. I don't mean to interrupt, but let me ask you a question and try to shed some light on this. Let's suppose these same two statements were made in a colloquy that occurred in a separate lawsuit between Alice and Apple. That would not amount to a prosecution history estoppel because it has nothing to do with the normal prosecution activities that take place in the patent office, where the patent office has a proceeding before it that will ultimately determine the scope of patent coverage, whether claims are allowed or not allowed. So arguments made in a separate lawsuit between parties don't create estoppels like that, don't create prosecution history. Why should this argument made in the course of a proceeding that occurs prior to the review be treated any differently? That's a very good question. First of all, this is in front of the patent office. That's one of the distinguishing factors. What difference does that make? Well, I'll tell you. Because these are statements made by the patent holder to the patent office for the purposes of telling the patent office what the scope and meaning of the claims is to avoid prior art in order to avoid a finding of unpatentability. That's something that's very much like original prosecution. And the same statements that you can see here could have been made in the original prosecution. And without knowing the context, you wouldn't be able to tell the difference because in both cases, the patent holder is trying to avoid patentability. And this court's law on prosecution history disclaimers is founded at least on two very important public interest policies, one of which is to avoid the situation of allowing a patent holder to approach the patent office and say one thing to avoid a finding of unpatentability, which is exactly what happened here, and then be able to go to the district court and say something else against an alleged infringer. That underlies many cases that this court is going all the way back to Southwall, for example. Similarly, public notice function. This court has said prosecution history disclaimers based on the fact that are entitled to look to the patent office, the record in the patent office, this is part of the record in the patent office, to see what the patentee has said about the meaning and scope of the claims. And the last thing I would say is that even if the disclaimers are made and they're effective, then that's it. That's it for the alleged infringer in the PTAP because the statements have consequences. The failure to institute or the decision not to institute is final and not appealable. So you have a situation here where Apple made a substantive argument to the patent office. A-List made a substantive argument to the patent office. The patent office, although it's not part of the, quote, merits proceeding, evaluated the merits of the party's claims on the substance and decided that it wasn't substantially likely that Apple would be able to prove its claim based upon the disclaimers made by A-List. And having denied that institution, Apple therefore had no right to a remedy. Yes, it does. You can go after it in district court. There's no estoppel. That's what Shaw says. So Apple still has another venue in which to pursue exactly the same claim. That's why it would be so awful if estoppel kicked in earlier, wouldn't it? If estoppel kicked in earlier, then Apple would be arguably precluded. I'm sorry, I didn't have any remedy with respect to what had happened because it's not appealable. The fact is what happened is- Yeah, but lots of people deal with that every day. The PTO denies, and sometimes they don't even give you a reason why, and you've got no right to appeal. Well, it's the same context. This is one reason why disclaimers should be applied. This court has had a well-developed body of disclaimer law that applies to statements exactly like this. And oftentimes you have a disclaimer in original prosecution. The examiner doesn't require an amendment, allows the claim. But because the patent holder said something in public very clearly that limits the claims, this court has said that should limit the claims, and people should be bound by what they said. There's no public policy reason or no legal reason why that shouldn't apply here where someone's talking to the patent office and limiting their claims to try to avoid a finding of unpatentability. This is exactly what happened- You mentioned- I'm sorry to interrupt, but I want to make sure I get my question in. You mentioned earlier that we have held that statements made during reexamination or probably reissue have been found to be prosecution history estoppel statements. My question is, are any of those- are you aware of any cases where- I know the patent owner can request reexamination. The patent owner can request reissue. I think only the patent owner can. And there can be times when those statements that are made in those requests- have any of those statements been considered to be prosecution history statements that are important for understanding the meaning of claims? Well, in the DuPont case, which is brief, that was a reissue case. So I think that may answer your question. And that was held to be part of the prosecution history. Not just the reissue, but maybe the preliminary statement before the reissue is actually instituted or granted. I mean, there is some procedure by which the PTO looks at the declaration that is provided with the reissue and makes a determination, for example, as to whether that is adequate for the reissue to occur. Is that a situation you're talking about? I am not sure the answer to that question, to be honest with you. Can I ask you a very policy-oriented question? So as I'm sitting here thinking about what you said, which was helpful because it called to mind to me the purpose of notice. So a person, a competitor, who wanted to know what the scope of these claims are would likely read the patent and, you know, if they had any gumption at all, would get the entire prosecution history of this patent. If there were a re-exam, they'd want it and they'd get it. That's what I believe people would do. And so those statements in there put the world on notice, at least with regard to what the inventor believes is the scope of his or her invention. And they affect more than just individual parties and individual cases, right? They would block prosecution more generally because they're all public. Unlike judicial estoppel, where a competitor wouldn't necessarily go after all the documents and, in fact, those could be sealed, right? Confidential, so many times all the stuff's confidential. So what's said before the patent office is something that is routinely turned to by every competitor in a space. They may not have access to, know about, or have any even ability to acquire things that may or may not be stated in a judicial document. That's exactly right, and that's entirely consistent with this court's prior holdings on judicial disclaimer and prosecution history disclaimer and why it's so important. And it does point out one of the many reasons why, although the same result can be achieved here through judicial estoppel, the court may not get there, and this is a superior way to reach the same conclusion. I see I'm over my time. That's okay. We're going to restore a little bit of rebuttal time for your colleagues. Are you all set? Yep. All set. Okay, thank you very much. Okay, let's do two minutes of rebuttal. Two minutes. There you are. I'm used to seeing you over here. Two minutes. Thank you, Your Honor. At the time, I'd like to respond to three issues. The first one was Ms. Fowler talked about the least-cost routing, suggesting that that would go to the lowest price. But in telecommunications, the least-cost routing is a decision. When you look at alternative pathways to the least cost, then you would take into account load balancing, pathways, encryption, and so on. So the least-cost routing terminology in telecommunications and entertainment content refers to looking at the cost but deciding within those alternatives what would matter. Since I didn't brief it, we didn't get a chance to brief what the meaning of the word least-cost routing is, but that's what least-cost routing means. Secondly, we discussed the issue of pre-IPR and whether those should be prosecution history disclaimers. The court found in CUSA that a post-institution are hybrid proceedings. The pre-IPR are very similar to an ITC-type proceeding where you are truly just sort of going back and forth and explaining to the court, to PTAB in saying, this is what our patent is about. So to hold those as prosecution disclaimers, Your Honor, sort of would change the nature of a pre-IPR proceeding more akin to an actual one that's instituted where the outcome of the patent, the scope of the claims can be discussed. You're not arguing that the remarks made should go away and be ignored. We're not. Because they're going to have some effect. They should have some effect, wouldn't you agree, either as a matter of prosecution history disclaimer or judicial estoppel. One way or the other, the statement was made. It's part of the public record. It's before the patent office. It's in the file history. It's not going to go away. And we're not arguing that it goes away, Your Honor. Well, if you're not arguing that it goes away, then you're stuck with it. Right, but the question is whether we should be stuck with it in terms of as a prosecution disclaimer or whether we should be stuck with it as a judicial estoppel. I think the right standard... The end result in terms of your case doesn't matter. What we call it doesn't. There are different standards. The first one is clear and unequivocal disclaimer versus, you know, the second one is clear inconsistency. So I do think the standards are a little bit different. Again, I come back to this case and say, Your Honor, please look at this case in those three sentences in their entirety, the context, and in those contexts, that was not intended to be a clear and unequivocal disclaimer. What we were trying to do was just reduce the virus spectrum that was being consumed. Okay. I thank both counsel. The argument is taken under advisement.